IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION


JAMES P. WILLIAMS,

    Plaintiff,

vs.                                      CASE NO. 1:06CV175-MP/AK

MICHAEL J. ASTRUE,
**Commissioner of Social Security**

    Defendant.

_____/


**REPORT AND RECOMMENDATION**

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for disability insurance benefits (DIB) filed under Title II of the Act.

Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

A.    **PROCEDURAL HISTORY**

Plaintiff filed an application for DIB on April 25, 2003, alleging a disability onset date of August 20, 2002, because of a spine and affective disorder.  Plaintiff petitioned for a hearing before an administrative law judge (ALJ), who conducted a hearing on November 15, 2002, and entered an unfavorable decision on December 22, 2005.  The

Appeals Council denied Plaintiff's request for review, thus making the decision of the ALJ the final decision of the Commissioner. This action followed.

**B.    FINDINGS OF THE ALJ**

The ALJ found that Plaintiff had a spine disorder and an affective disorder, which were severe impairments, but were not severe enough to meet the listings. (R. 17). The ALJ found that the back condition as confirmed by MRI shows a bulge and previous laminectomy, but that his reported daily activities of hunting and fishing several times a week are physical in nature and require extensive amounts of sitting and standing. (R. 18). None of Plaintiff's treating physicians opine that he is precluded from employment and in fact Dr. Depaz is of the opinion that he could do light work. (R. 19). Based on the evidence, the ALJ found Plaintiff capable of reduced light work, standing/walking six out of eight hours, with a sit/stand option every 60 minutes; lifting or carrying 20 pounds occasionally and 10 pounds frequently; occasional bending, crouching, kneeling, stooping, squatting, or crawling; avoiding ladders and unprotected heights or heavy moving machinery; and because of his affective disorder, he should be limited to simple tasks in a low stress environment. (R. 19). The vocational expert testified that he could not perform his past relevant work, but could perform a number of other jobs in the national economy, and he was therefore not disabled.

**No. 1:06CV175-MMP/AK**

**C.     ISSUES PRESENTED**

Plaintiff argues that substantial evidence does not support the ALJ's assessment of Plaintiff's pain testimony, and the ALJ should have relied upon the vocational expert's opinion that Plaintiff was not capable of competitive employment.

The government responds that the ALJ gave adequate reasons for not accepting the credibility of the Plaintiff because the objective medical evidence did not support the severity of his allegations;  that Plaintiff's treating physician Dr. Depaz was using only conservative treatments; that neither Dr. Depaz nor Dr. Pino had indicated Plaintiff was precluded from working because of his physical or mental conditions; and that his pain medication and depression medication appeared to be working to control his conditions. In addition, Plaintiff had indicated he was looking for work and had gone to the unemployment office to apply for compensation.  His self-reported daily activities were also inconsistent with total disability and the ALJ properly considered this in weighing his credibility.

Plaintiff's allegations that he needed additional breaks during the day were unsupported by the medical record and the ALJ could properly discount this limitation when assessing the vocational experts response.

The issue thus presented is whether the Commissioner's decision that Claimant is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

**No. 1:06CV175-MMP/AK**

**D.     STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court.  The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied.  Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997).  Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam).  It is more than a scintilla, but less than a preponderance.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).  The court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996).  It must determine only if substantial evidence supports the findings of the Commissioner.  See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam).  Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them.  Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).  Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an

**No. 1:06CV175-MMP/AK**

adequate basis for it to determine whether proper legal principles have been observed requires reversal.  Id. (citations omitted).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary.  Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work.  If Plaintiff establishes that his impairment keeps him

**No. 1:06CV175-MMP/AK**

from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).  It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand. 42 U.S.C. § 405(g); Myers v. Sullivan, 916 F.2d 659, 676 (11th Cir. 1990).

### E.   SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY

Plaintiff hurt his back on January 12, 2001 at work when he bent over to pick something up.  (R. 149).  He had a laminectomy in May 2001, (R. 95) [the records of this procedure are not in the transcript], and he was treated by Dr. Rogozinski following the surgery.  (R. 76-95).  He was deemed to have a whole body impairment of 7% and was released to work full time at a medium exertional level with a sit/stand option in November 2001.  (R. 76).  Plaintiff sought treatment from a chiropractor, Dr. Suggs, in February 2002, after returning to work the month prior, and re-injuring his back.  (R. 92-95).  His first visit to Dr. Depaz was in June 2002, for continued back pain.  (R. 96-154).  An MRI taken on July 8, 2002, showed a stable bulge with small protrusion and a normal EMG study.  (R. 144-145, 147).  Dr. Depaz recommended light work duty with no bending, stooping or twisting, and no recurrent lifting.  (R. 145).  He treated Plaintiff

**No. 1:06CV175-MMP/AK**

with medication and injection, but the back pain continued and he was fired from his job. (R. 140-143). On October 18, 2002, Plaintiff reported that the medication was helpful, but he still suffered from pain and Dr. Depaz recommended light work duty lifting up to 20 pounds, no prolonged back flexion or extension, and no bending, squatting or stooping. (R. 133-134). In November, 2002, Plaintiff was "getting worse," although he was looking for work. (R. 131-132). In January 2003, he was rated at maximum medical improvement with a disability rating of 10%. (R. 129-130). He was looking for work and reported significant pain without medication. (R. 129-130). An MRI was taken on August 21, 2003, which showed some changes causing narrowing of the left L5-S1 foramen and lateral recess of the left S1 nerve root with no nerve root compression. (R. 102-103). He was restricted to light activity levels.

Dr. Pino, a psychiatrist, began treating Plaintiff on January 30, 2003, and found him to be depressed because of a chronic pain syndrome. (R. 160-173). His prognosis was poor without relief for the back pain, but he found no psychiatric restrictions on his ability to work. (R. 161).

A repeat MRI on August 6, 2004, by Dr. Lloyd, found the back condition unchanged from the previous study and he was treated with medication and advised to avoid long sitting periods. (R. 187-203).

## F.    SUMMARY OF THE ADMINISTRATIVE HEARING

Plaintiff was 36 years old at the time of the hearing. (R. 208). He completed the seventh grade in school and was 220 pounds at 5'11". (R. 209-210). He is precluded

**No. 1:06CV175-MMP/AK**

from working because of his back pain which radiates into his legs and feet. (R.210). He takes Flexeril, Cymbalta, Doxepin, and Darvocet, which "take the edge off a little bit." (R. 211). He spends his time babysitting four or five hours a day for his grand child, does some vacuuming, laundry and cooking about three times a week, cuts an acre and a half on a riding mower, which takes about two hours, and hunting and fishing on a weekly basis. (R. 214-219). He also gets depressed and saw Dr. Pino a year or so ago, but Dr. Pino did not prescribe the present anti-depressant he was taking. (R. 220-221). He tried to work at the feed mill after his initial injury, but it did not work out, he had to lie down at the job and they eventually fired him. (R. 224-225). He has some side effects from his present medication such as blurred vision, and headaches. (R. 225). He has difficulty concentrating and cannot recall what he did the day before. (R. 227-228). His leg pain is at a level six and his back pain is at a level four. (R. 228). He can sit for about an hour and then he must stand up and he can stand up for about thirty minutes before his leg starts stinging like needles. (R. 229). Walking causes his legs to have muscle spasms. (R. 229). He needs to lie down for about thirty minutes four or five times a day. (R. 230). If his back hurts while he doing chores such as mowing the grass, he quits, and sometimes his wife finishes up for him. (R. 230).

The hypothetical given to the ALJ is light work limited by the need to avoid ladders and unprotected heights, to avoid operation of heavy moving machinery, only occasional bending, stooping, crawling, kneeling or crouching. He should avoid complex tasks, he needs a sit/stand option on 60 minute cycles, with low stress work.

**No. 1:06CV175-MMP/AK**

(R. 235). The expert testified that Plaintiff could not perform any of his past relevant work, but could do the following: ticket seller; parking lot attendant; sorters, such as testers, samplers, weighers, inspectors, under the general sorting heading, mainly in the agricultural field, and packaging jobs with a sit/stand option, and surveillance monitoring. (R. 235-237). These jobs would allow for two 15 minute breaks, and no more than one or two unscheduled absences a month. (R. 237). If a person required more than these two breaks a day, he would probably be terminated from a competitive employment situation. (R. 238).

**G.    DISCUSSION**

  a)    Pain Assessment

Pain and other subjective symptoms are treated by the regulations as symptoms of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, "unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." Accord 20 C.F.R. § 416.929. In Hand v. Heckler, 761 F.2d 1545, 1549 (11th Cir. 1986), the Eleventh Circuit adopted the following pain standard:

> There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

The Eleventh Circuit continues to follow the Hand test. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002). "While both the regulations and the Hand standard require

**No. 1:06CV175-MMP/AK**

objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991). The court has held that "[p]ain alone can be disabling, even when its existence is unsupported by objective evidence." Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992), citing Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987). Standing alone, however, a claimant's testimony of pain is not conclusive evidence of disability. Macia v. Bowen, 829 F.2d 1009, 1011 (11th Cir. 1987). If the Commissioner rejects a claimant's allegations of pain, he must articulate explicit and adequate reasons, and these reasons must be based on substantial evidence. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987). The failure to articulate adequate reasons for discrediting pain testimony mandates that the testimony be accepted as true as a matter of law. Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

Plaintiff argues that the record is replete with references to and treatment of back pain, and the ALJ erred in discrediting his testimony about pain and its affects upon his ability to work. Actually, the ALJ acknowledged the numbers of physicians who were involved in Plaintiff's pain management, but he did not find that the level of pain Plaintiff was experiencing totally precluded him from all work. (R. 18). The ALJ found that the MRI films did not indicate a back condition that would completely disable him and no doctor had found him totally and permanently disabled, in fact, Dr. Depaz had recommended light work activity with no bending, stooping, twisting and lifting. (R. 19).

**No. 1:06CV175-MMP/AK**

The ALJ found persuasive of the fact that Plaintiff was not precluded from working because of his pain, the Plaintiff's testimony that he hunted and fished several times a week. These activities were, as the ALJ noted, very physical and involved extensive sitting and standing, which could be translated to a work setting. (R. 18). While Plaintiff may disagree with the ALJ's assessment, a clearly articulated credibility finding with substantial supporting evidence in the record should not be disturbed by a reviewing court. Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986); Sellers v. Barnhart, 246 F.Supp.2d 1201, 1213 (M.D. Ala. 2002). Thus, there is no merit to this ground for remand.

      b)      Vocational Expert testimony

Specifically, Plaintiff argues that the ALJ should have accepted the response to his hypothetical when he added that Plaintiff would have to take more than normal breaks on a job, which the VE responded would result in his termination at a competitive job.

At the fifth step of the evaluation process, the ALJ must determine whether a Claimant, based on his residual functional capacity, age, education and work experience, can adjust to other work in the national economy. 20 C.F.R. § 404.1520(a)(4). The ALJ may make this determination by reliance upon the Medical Vocational Guidelines or by utilizing the services of a vocational expert. Phillips v. Barnhart, 357 F.3d 1232, 1239 (11th Cir. 2004). The Eleventh Circuit has "recognized that the grids may be used in lieu of vocational testimony on specific jobs if none of

**No. 1:06CV175-MMP/AK**

claimant's nonexertional impairments are so severe as to prevent a full range of employment at the designated level." Wolfe v. Chater, 86 F.3d at 1078, quoting Passopulos v. Sullivan, 976 F.2d 642, 648 (11th Cir. 1992). See also Foote v. Chater, 67 F.3d 1553, 1558 (11th Cir. 1995). "It is only when the claimant can clearly do unlimited types of work . . . that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy." Allen v. Sullivan, 880 F.2d 1200, 1202 (11th Cir. 1989) (citation omitted). Exclusive reliance upon the grids is not appropriate when claimant has a nonexertional impairment that significantly limits his basic work activities. Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990).

When the ALJ uses a vocational expert, he elicits responses from the expert by posing hypothetical questions to him or her. Phillips, 357 F.3d at 1240. In order for the expert's testimony to constitute substantial evidence to support the ALJ's findings with regard to this point, the ALJ must pose a hypothetical which includes all of Claimant's impairments. Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999). However, the ALJ is only required to pose those limitations he finds severe in the hypothetical to the expert. Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985).

There is no evidence in the record, except Plaintiff's subjective complaints which the ALJ found not totally credible, to support a finding that he must take more than normal breaks at a job. Again, none of the treating physicians suggested that Plaintiff needed to lie down throughout the day or otherwise suggested that he could not work,

**No. 1:06CV175-MMP/AK**

except as to work that required heavy lifting or frequent bending, stooping, and twisting. Thus, there is no evidence that would require the ALJ to include in his hypothetical to the expert that Plaintiff must take additional breaks from work . There is no merit to this ground for relief either.

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be **AFFIRMED**.

At Gainesville, Florida, this  **6**$^{th}$  day of February, 2008.


*s/ A. KORNBLUM*
**ALLAN KORNBLUM
UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.

**No. 1:06CV175-MMP/AK**